UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DENNIS R. WOODWARD,                  )
                                     )
            Petitioner,              )
                                     )
      vs.                            )         Case No. 4:20CV1600 RHH
                                     )
RICHARD ADAMS[1],                    )
                                     )
            Respondent.              )

**MEMORANDUM AND ORDER**

This matter is before the Court on Missouri State prisoner Dennis R. Woodward's *pro se*

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   The petition is fully briefed and

ready for disposition.

On July 18, 2014, a jury in the Circuit Court of Phelps County, Missouri, found Petitioner

guilty of one count of first degree murder, one count of first degree robbery, two counts of armed

criminal action, and one count of tampering with a motor vehicle.   On October 27, 2014,

Petitioner was sentenced as a prior and persistent offender to life without parole on the murder

conviction, thirty years' imprisonment on the robbery and armed criminal action convictions, and

fifteen years' imprisonment on the tampering conviction, with said sentences to run concurrently.

The Missouri Court of Appeals affirmed the convictions and sentences.   Petitioner thereafter

filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which

was denied without an evidentiary hearing.[2]   The Missouri Court of Appeals affirmed the denial

---

1 On August 1, 2022, Richard Adams became Warden of the Eastern Reception, Diagnostic and
Correctional Center.  The Court therefore grants Petitioner's Motion to Substitute Party (ECF
No. 17), and substitutes Richard Adams for David Vandergriff as Respondent herein.
2 The 29.15 motion court received evidence in the form of deposition transcripts of Petitioner

of post-conviction relief.

Petitioner is currently incarcerated at the Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri.  In the instant petition for writ of habeas corpus, Petitioner raises the following five claims for relief:

(1)    That Petitioner received ineffective assistance of counsel, in that trial counsel discouraged and refused to call Petitioner to testify at trial;

(2)    That Petitioner received ineffective assistance of counsel, in that trial counsel failed to request DNA testing on gloves Petitioner allegedly wore during the commission of the crime;

(3)    That Petitioner received ineffective assistance of counsel, in that "[c]ounsel errors left the method of a reasonable jury in doubt about Mr. Woodward being the true murderer";

(4)    That the trial court erred in failing to allow Petitioner to impeach his co-offender's testimony through her ex-husband; and

(5)    That the trial court erred in failing to declare a mistrial or give a curative instruction when the State declared during closing arguments that "there was no evidence of a struggle between the victim and Ms. Gunter who Mr. Woodward claims killed the victim."

The Court will address the claims in turn.

## DISCUSSION

### I. Procedurally Defaulted Claims

#### A.    Ground 3

As stated above, in Ground 3 of his petition Petitioner asserts he received ineffective assistance of counsel, in that "[c]ounsel errors left the method of a reasonable jury in doubt about Mr. Woodward being the true murderer."  The Court construes Petitioner's claim to be that absent trial counsel's unspecified errors, the jury would have had reasonable doubt as to Petitioner's guilt.

---

and his trial counsel, and the affidavit of Jani Harman, a DNA expert.

The Court's review of the record reveals Petitioner did not raise the claim asserted in Ground 3 in his amended 29.15 post-conviction motion, nor did he raise it on appeal from the denial of that motion.   Because Petitioner failed to raise the claim in any state court proceeding, he is procedurally barred from pursuing it here.  *Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Forest v. Delo*, 52 F.3d 716, 719 (8th Cir. 1995); *Keithley v. Hopkins*, 43 F.3d 1216, 1217 (8th Cir.), *cert. denied*, 515 U.S. 1163 (1995).   The Court therefore cannot reach the merits of the claim absent a showing of cause and prejudice, or a demonstration "that failure to consider the claim[] will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

With respect to cause for defaulting on the claim raised in Ground 3, the Court notes that Petitioner offers no explanation for the omission.[3]   Nor does the Court find that failure to consider his claim would result in a fundamental miscarriage of justice.   The fundamental miscarriage of justice exception "requires a habeas petitioner to present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted."  *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir.) (citations omitted), *cert. denied*, 549 U.S. 1036 (2006).  "The requirements to establish the requisite probability of innocence are high.  [Petitioner] must first come forward with 'new' evidence, and then he must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005) (internal quotation marks and citations omitted), *cert. denied*, 547 U.S. 1022 (2006).

Upon consideration, the Court finds Petitioner cannot meet this high standard.   While Petitioner apparently asserts his actual innocence with respect to at least some of the alleged

---

3 Because Petitioner has not established the requisite cause, the Court need not consider whether he has demonstrated the prejudice required to overcome the procedural default of Ground 3.

misconduct, he supports this claim with only his own declarations.   As explained by the Eighth Circuit, a petitioner's "bare, conclusory assertion that he is actually innocent is not sufficient to invoke the exception," because if "protestation of innocence [were] the only prerequisite to application of this exception, we fear that actual innocence would become a gateway forever open to habeas petitioners' defaulted claims."   *Weeks v. Bowersox*, 119 F.3d 1342, 1352-53 (8th Cir. 1997) (internal quotation marks and citation omitted), *cert. denied*, 522 U.S. 1093 (1998).

Therefore, the claim raised in Ground 3 of the instant petition is procedurally barred and must be denied.

**B.** <u>**Ground 5**</u>

As stated above, in Ground 5 of his petition Petitioner asserts the trial court erred in failing to declare a mistrial or give a curative instruction when the State declared during closing arguments that "there was no evidence of a struggle between the victim and Ms. Gunter who Mr. Woodward claims killed the victim."  (ECF No. 1-1, P. 3).   Petitioner raised this claim on direct appeal, and the Missouri Court of Appeals denied the claim as follows:

> [During Petitioner's trial], [s]everal law enforcement officers testified that upon arriving at Victim's home, they found Victim lying between the living room couch and the coffee table.  No testimony was adduced by either side as to whether there were, specifically, any signs of a struggle….
>
> During closing argument, the State argued that Elisabeth, being only a "120-pound, 5-foot-4 woman" could not have stabbed a "100-pound woman with no struggle," that there was "no evidence of a struggle."  Defense counsel made no objection to this statement, and did not request any relief such as a mistrial or a curative instruction….
>
> In his second point, Woodward argues that the trial court committed plain error by not *sua sponte* interjecting when the State suggested there was "no evidence of a struggle" during closing arguments.
>
> Because trial counsel did not object to the contested statements by the State, the objection is not preserved.  As a result, "we can review only for plain

---

*Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007).

– 4 –

error, which we are especially reluctant to do in the context of closing argument." **State v. Goers**, 432 S.W.3d 276, 281 (Mo.App. E.D. 2014).  "[T]he decision to object is often a matter of trial strategy, and in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." **State v. Edwards**, 116 S.W.3d 511, 536 (Mo. banc 2003) (internal quotation and citations omitted).

> Claims of plain error are reviewed under a two-prong standard.  In the first prong, we determine whether there is, indeed, plain error, which is error that is evident, obvious, and clear.  If so, then we look to the second prong of the analysis, which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error.  A criminal defendant seeking plain error review bears the burden of showing that plain error occurred and that it resulted in a manifest injustice or miscarriage of justice.

**State v. McClendon**, 477 S.W.3d 206, 216 (Mo.App. W.D. 2015) (internal quotation and citation omitted).

"Plain error will seldom be found in unobjected to closing argument." **State v. Peterson**, 471 S.W.3d 767, 773 (Mo.App. W.D. 2015) (internal quotation and citation omitted).  We review challenged comments in closing argument in the context of the whole record.  **State v. Baumruk**, 280 S.W.3d 600, 618 (Mo. banc 2009).

Woodward asserts the trial court plainly erred in failing to intervene when the State suggested there was no evidence of a struggle because there was evidence of a struggle.  However, during closing argument, the State "has the right to draw any inferences from the evidence which [it] believes in good faith are justified."  **McClendon**, 477 S.W.3d at 218.  "This is particularly true in rebuttal, where the State is given considerable leeway to make retaliatory arguments at closing and may retaliate to an issue raised by the defense even if the prosecutor's comment would have been [otherwise] improper."  **Id.**

Here, as part of the defense's case and closing argument, the defense suggested that it was not Woodward, but Elisabeth who killed Victim.  In responding to this argument, the State stated in rebuttal:  "And nobody here is claiming Eli[s]abeth has clean hands.  She's guilty.  But she's not the one that stuck the knife in [Victim]'s neck.  [Woodward] is.  He had the power.  Not some 120-pound, 5-foot-4 woman taking on a 100-pound woman and no struggle.  There was no evidence of a struggle.  He did it."

In suggesting that there was evidence of a struggle, Woodward points to scrapes and abrasions on Victim's body, and the fact that Victim had two stab wounds to the left side of her neck.  Woodward argues that "bruising, abrasions and multiple stab wounds can indicate a struggle."

However, the fact that *some* evidence could be *consistent* with a certain conclusion does not preclude the State from suggesting the evidence does not support that conclusion.   The State's suggestion that there was no evidence necessitating the conclusion that there was a struggle could properly have been made in good faith.   In viewing the whole record, as we must when reviewing a challenged comment in closing argument, ***Baumruk***, 280 S.W.3d at 618, we observe that there was evidence that:   the only thing a witness to the murder heard from another room was Victim say, "don't break my neck, please, it hurts," and there were no knife marks on the couch or any items surrounding the couch. The State could properly argue that scrapes and stab wounds on Victim did not, in the context of all the evidence in the case, properly amount to evidence of a struggle between two women of close approximate size.   There was no "evident, obvious, and clear" error by the trial court in failing to intervene after such comments by the State.

Having found that the first prong of plain error review is not satisfied, we need not examine the prejudice prong.   The trial court did not plainly err in failing to intervene after the State suggested there was no evidence of a struggle in closing rebuttal.   Point II is denied.

(Resp. Exh. C, PP. 6, 7, 9-11).

Petitioner did not preserve his claim regarding closing argument, because he failed to object to the alleged error at trial.   When a litigant fails to object at trial to an error, this "'leaves the appellate court with the power to notice only plain error.'"   *Dixon v. Crete Medical Clinic, P.C.*, 498 F.3d 837, 849 (8th Cir. 2007) (quoting *Rahn v. Hawkins*, 464 F.3d 813, 819 (8th Cir. 2006)).   "Under plain error review, an error not called to the trial court's attention by a contemporaneous objection will be grounds for reversal only if the error prejudiced the substantial rights of a party and would 'seriously affect the fairness, integrity or public reputation of judicial proceedings' if left uncorrected."   *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quotations omitted)).   A prosecutor's improper closing argument violates a defendant's due process rights when the prosecutor's statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process."   *Sublett v. Dormire*, 217 F.3d 598, 600 (8th Cir. 2000) (internal quotation marks and citations

omitted).   The prosecutor's closing argument must be "so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial."   *Id.* (internal quotation marks and citation omitted).

The Missouri Court of Appeals reviewed Petitioner's claim for plain error and denied it, finding the prosecutor's statement during closing argument that there existed no sign of a struggle was a permissible inference drawn from the evidence adduced at trial.   A state court's plain error review of a defaulted claim does not cure procedural default.   *Clark v. Bertsch*, 780 F.3d 873, 876-877 (8ᵗʰ Cir. 2015).   This Court thus may review Petitioner's claim on the merits only if he shows cause and prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice. Because Petitioner provides only bare assertions in his petition, offering no justification for his failure to object to the prosecutor's statements during trial, he has neither shown cause nor prejudice, nor demonstrated how failure to consider his claim would result in a fundamental miscarriage of justice.   Petitioner's claim is therefore procedurally defaulted, and Ground 5 must be denied.

## II.   Claims Addressed On The Merits

### A.   Ground 1

As stated above, in Ground 1 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel discouraged and refused to call Petitioner to testify at trial.   Specially, Petitioner states as follows:   "Mr. Woodward testified in his deposition that he wanted to testify at trial, but trial counsel told him 'right from the beginning' that he didn't want Mr. Woodward to testify, because then the State would bring up his phony confession[4] and

---

4 Petitioner claims that although he was at home asleep at the time of the murder, he told police he was outside the victim's home when his girlfriend, Ms. Elizabeth Gunter, killed the victim. (ECF No. 1-1, PP. 11-12).   Petitioner maintains he did so to protect his nephew, because Ms. Gunter informed Petitioner his nephew rode with her to the victim's house.   (*Id.*, P. 12).

criminal history, and make him look like 'a really horrible person…a psycho killer.'"   (ECF No. 1-1, P. 13).   Petitioner maintains he nevertheless wanted to testify, in order to tell the jury the truth about what happened.   (*Id.*).

Petitioner raised this claim before the 29.15 post-conviction motion court, and the court denied the claim as follows:

<u>FINDINGS OF FACT</u>

6.      In his amended motion, Movant[5] asserts two claims.   He claims he was denied his rights to due process and effective assistance of counsel, as guaranteed by the V, VI, and XIV Amendments to the U.S. Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution, because:   (1) trial counsel dissuaded him from testifying without a reasonable strategic reason to do so, as his testimony would have established his alibi, explained how he became associated with the victim's money orders after her murder, and contradicted co-defendant Elisabeth[6] Gunter's accusations[.]…

9.      Movant did not testify at trial.   At a hearing conducted outside the presence of the jury, following a recess, the trial court examined Movant about his decision not to testify.   Counsel advised the court they had discussed whether Movant would testify.   Movant confirmed he had a clear mind, understood the decision to testify was his alone to make, and advised he did not want to testify. The trial court accepted Movant's decision as knowing and voluntary….

10.      ….In his deposition testimony, Movant denied stabbing Dishneau[7] or having anything to do with her death.   Movant testified he disagreed with Counsel about the "love angle" defense, which he claimed that Counsel promoted as the reasons for Movant's conduct.   Movant testified that Counsel advised him from the beginning he did not want Movant to testify.   Movant recalled Counsel's reasons were because of the false confession, his criminal history, and because the prosecution would make him look like a horrible person.

Nevertheless, Movant claimed that he intended to testify at trial.   At the first trial, which resulted in a hung jury, he did not testify.   That hung-jury experience "in which jurors had not heard the truth" left Movant with the impression he would have been acquitted had he testified.

At the beginning of the second trial, Movant intended to testify, and he recalled that Counsel agreed he would call him.   Movant claimed that this

---

5 Petitioner is referred to as "Movant" by the 29.15 motion and appellate courts.
6 Ms. Gunter's first name is alternately spelled "Elizabeth" and "Elisabeth."
7 Ms. Joy Dishneau was the victim in Petitioner's case.

bargain was made after Movant had tried to fire Counsel in a pre-trial hearing, because Counsel had not been willing to craft the defense following Movant's wishes.   Movant testified that Counsel had been adamant he was not going to put Movant on the stand.   Movant related Counsel then relented, promising that, "if it's that important to you, I'll put you on the stand."

Believing he would take the stand, Movant claimed that he was surprised when Counsel announced the defense was resting at trial, as Movant had not been called.   Movant recalled there was a recess, and the Court permitted him to speak with Counsel, Counsel's assistant, and Counsel's investigator alone in the courtroom.   Movant claimed that he felt pressured by the three of them to refrain from testifying on his own behalf.

The trial transcript from the jury trial reflects that the following record was made concerning Movant's decision not to testify:

THE COURT:          We are back on the record out of the presence of the jury, in the presence—we are in the presence of all counsel and the Defendant.   Mr. Babcock[8], is there a—first of all, have you had an opportunity to discuss with your client whether or not he wishes to testify in this case or whether he wishes to decline to testify?

MR. BABCOCK:          I have had that discussion and he does not wish to testify.

THE COURT:          Do I have your permission to inquire of your client on that issue?

MR. BABCOCK:          Yes.

QUESTIONS BY THE COURT:

Q.          Is your name Dennis Woodward?

A.          Yes, sir.

Q.          Of course, you are the Defendant in this action?

A.          Excuse me.

Q.          Of course, you are the Defendant in this action; is that right?

A.          Yes, sir.

Q.          And as you sit here today, do you have a clear mind?

---

[8] Mr. Kevin Babcock was Petitioner's attorney at trial.

A.      Yes, sir.

Q.      Are you under the influence of any alcohol or drugs or any sort of medication here today?

A.      No, sir.

Q.      Have you had the chance to visit with your attorney, Mr. Babcock, to your satisfaction before making the decision as to whether or not you wish to testify in this case?

A.      Yes, I have.

Q.      And you understand that that decision is solely yours?

A.      Yes, sir.

Q.      And what is your decision at this point?

A.      My decision is to—not to testify.

Q.      Okay.

A.      In my own behalf.

Q.      Do you wish to obtain any further information before making that decision?

A.      No, sir.

Q.      Okay.   The Court accepts your decision not to testify as knowing and voluntary.

11.     Movant also submitted the July 10, 2018 deposition of Counsel, during which the following facts were adduced:

Counsel explained that the theory of defense in Movant's trials was that Gunter was not believable.   Counsel advised he and Movant had discussed testifying many times, including times between the first and second trial.[9] Counsel knew Movant had advised he had been at home, sleeping, when Dishneau was killed, and didn't find out about it until much later.   Counsel also related Movant had explained he hadn't known where the money orders had come from before they were used.

---

9 Petitioner's first trial resulted in a hung jury.

In counsel's view, the advantage of Movant testifying would be that he would get to tell his side of the story, but the drawbacks included admission of the suppressed confession[10] and his prior criminal record.   Counsel testified that Movant's testimony would help rebut what Gunter said about him.   Counsel believed it was not in Movant's best interests to testify.   When the second trial began, Counsel believed there was a 50-50 chance Movant would testify. Counsel also explained he never specifically told Movant he did not want him to testify, but that Movant should see how the trial is going before making the decision.   Counsel denied that he ever promised to put Movant on the stand. Counsel recalled Movant seemed unclear about whether he wanted to testify, and asked advice from Counsel and Counsel's assistant.   Counsel advised him to consider not testifying.   At the close of State's evidence, Counsel, along with his assistant and investigator, spoke with Movant at length.     During that conversation, Counsel advised Movant to consider not testifying.     Counsel denied telling Movant that they had the case "in the bag."   Counsel agreed he believed had Movant testified, he would have made his case worse….

<u>CONCLUSIONS OF LAW</u>

13.    The Sixth Amendment to the Constitution of the United States established the right to counsel, a fundamental right of all criminal defendants through the due process clause of the Fourteenth Amendment.   *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792 (1963).   This right is designed to assure fairness, and thus to give legitimacy to the adversary process.   To fulfill its role of assuring a fair trial, the right to counsel must be the right to "effective" assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574 (1986); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441 (1970).   When a criminal defendant seeks post-conviction relief on a claim of ineffective assistance of counsel, he must establish first, that his attorney's performance was deficient and second, that he was prejudiced thereby.   *Strickland v. Washington*, 466 U.S. 668, 687-689, 104 S.Ct. 2052, 2064-65 (1984); *Seales v. State*, 580 S.W.2d 733, 735-736 (Mo. banc 1979).   To prove ineffective assistance, a defendant must show that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and that the defendant was thereby prejudiced.   *State v. Butler*, 951 S.W.2d 600 (Mo. banc 1997) (citing *Strickland*, 466 U.S. at 687); *State v. Wise*, 879 S.W.2d 494, 524 (Mo. banc 1994).   To prove prejudice, a defendant must show a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."   *State v. Shurn*, 866 S.W.2d 447, 468 (Mo. banc 1993).

---

10 Petitioner's attorney filed a motion to suppress Petitioner's January 9, 2012 statement to a police investigator.   The trial court sustained the motion after the State indicated it did not object.   The State advised, however, that it would seek admission of portions of the statement if the defense opened the door about any part of the statement made to the investigator.   (*See* ECF No. 18-1, PP. 280-81).

14.     A defendant's right to testify on his own behalf is a fundamental right which only he may waive.  U.S. Const. VI Amend.; *Simmons v. State*, 100 S.W.3d 143 (Mo. App. E.D. 2003); *Allen v. State*, 50 S.W.3d 323 (Mo. App. W.D. 2001).   However, if a defendant waives his right to testify, like his waiver of other constitutional rights, it should be made voluntarily and knowingly.  *State v. Fanning*, 939 S.W.2d 941, 949 (Mo. App. W.D. 1997).

15.     In the instant case, Movant voluntarily and knowingly waived his right to testify.   Movant's trial counsel did not render ineffective assistance of counsel in advising Movant of the advantages and disadvantages of testifying, as well as the advantages and disadvantages of declining to testify.   The final decision of whether to testify was made by Movant, without undue influence or coercion of his counsel.   The performance of counsel in advising Movant on this issue did not fall below an objective standard of reasonableness.   Further, addressing the prejudice prong of the *Strickland* test, the Court finds that no prejudice resulted from the performance of counsel with respect to the issue of Movant's decision not to testify.   Therefore, Movant's first claim for relief under his amended motion is denied.

(ECF No. 18-1, PP. 280, 284, 288-292, 293-295 (citations to the record omitted)).   Movant

advanced the claim on appeal from the denial of his 29.15 motion, and the Missouri Court of

Appeals denied the claim as follows:

To prevail on an [ineffective assistance of counsel] claim, Movant must prove *Strickland's* performance and prejudice prongs, each by a preponderance of the evidence.   Movant must overcome the strong presumption that trial counsel's conduct was reasonable and effective.   Strategic decisions made after thorough investigation of relevant facts and law are virtually unchallengeable.

Defense-counsel advice whether an accused should testify generally is a matter of trial strategy which, barring exceptional circumstances, is not a ground for post-conviction relief.   Counsel was not ineffective for failing to call Movant at trial if Movant, having been apprised of his right to testify, made an intelligent and voluntary decision to waive that right.

The record supports the motion court's finding that Movant voluntarily and knowingly waived his right to testify without undue influence or coercion by Counsel.   Counsel discussed the issue with Movant multiple times ("pretty much every time I spoke to him"), including during a two-hour recess just prior to Movant informing the court he chose not to testify.   Counsel testified he "always made it clear to [Movant] that it was his right to testify," that "he's the only one that could make that decision," and the decision was totally up to him.   When the trial court questioned Movant about his decision, Movant acknowledged that he discussed the issue with Counsel, understood the decision was solely his, and that he chose not to testify.

Furthermore, Counsel's advice against Movant testifying was strategic. As Counsel explained at the PCR hearing, after the state rested at trial, Counsel felt the risks of jurors learning of Movant's criminal record, and possibly his suppressed confession, outweighed the benefits of Movant testifying. Counsel advised Movant that testifying was not in his best interest and would hurt his case. Movant acknowledges that Counsel explained the reasons why he recommended that Movant not testify.

Movant essentially claims his testimony was too important to forego. Rule 29.15 is no vehicle for second-guessing trial-strategy decisions based on reasoned consideration of alternatives.  Point 1 fails.

(Resp. Exh. G, PP. 3-4 (internal quotation marks, citations and footnote omitted)).

With respect to federal court review of state court conclusions, 28 U.S.C. § 2254 states in pertinent part as follows:

(d)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under federal law, in order to prevail on his ineffective assistance of counsel claim, Petitioner must show that his attorney's performance was "deficient," and that the deficient performance was "prejudicial." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.  To overcome this presumption, Petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally

competent assistance." *Id.*

Even if Petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. *Id.* at 694. To do so, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

A criminal defendant has a federal constitutional right to testify on his own behalf at his criminal trial. *Rock v. Arkansas*, 483 U.S. 44, 51-52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). "Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right," and that waiver must be made voluntarily and knowingly. *United States v. Bernloehr*, 833 F.2d 749, 751 (8th Cir. 1987) (citations omitted). Although the decision to testify rests solely with the defendant, a defendant is entitled to receive reasonably competent advice concerning that right. *Jackson v. State*, 205 S.W.3d 282, 286 (Mo. App. 2006). Where a state court's finding of the attorney's advice regarding the right to testify and of the acceptance of counsel's advice are clearly supported by the record, a federal habeas court should "not second guess them." *Frey v. Schuetzle*, 151 F.3d 893, 898 (8th Cir. 1998). A trial counsel's advice not to testify is not deemed ineffective assistance of counsel if it might be considered trial strategy. *See Johnson v. Lockhart*, 921 F.2d 796, 800 (8th Cir. 1990); *Drake v. Wyrick*, 640 F.2d 912, 915 (8th Cir. 1981).

Upon consideration the Court finds that with this claim, Petitioner fails to establish that his counsel's performance was constitutionally deficient. As noted by the State courts, Petitioner informed the trial court that he fully understood his right to testify, and that it was his decision alone to forego said right. (*See* Resp. A-4, PP. 95-97). In light of Petitioner's testimony, it was not unreasonable for the State courts to deny Petitioner's claim that his trial

counsel's advice not to testify constituted deficient performance.  *See, e.g.*, *Berkovitz v. Minnesota*, 505 F.3d 827, 828 (8th Cir. 2007) (per curiam) (denying petitioner's claim that she was unduly influenced or coerced into waiving her right to testify by her counsel's conduct; finding her waiver was knowing and voluntary based on evidence that trial counsel had informed her of her right to testify, that the trial court made sure that she understood her right to testify, and that petitioner remained silent after her trial counsel rested); *Sansoucie v. Wallace*, 4:10-CV-2393-ACL, 2014 WL 2611802, at *4 (E.D. Mo. Jun. 11, 2014) (state court reasonably found that trial counsel was not ineffective for failing to inform petitioner that it was his decision whether to testify in his defense, where the trial court advised petitioner of his right to testify and the petitioner testified during his trial that he understood his rights and decided not to testify after consulting with his attorneys); *Blanchard v. Wallace*, No. 4:12-CV-1269-CEJ, 2014 WL 1648891, at *2 (E.D. Mo. Apr. 24, 2014) ("Petitioner's acknowledgment of his understanding of his right to testify evidences that he voluntarily waived this right at trial.").   As the State courts' determination was not contrary to federal law and did not involve an unreasonable determination of the facts in light of the evidence presented during trial, *see* 28 U.S.C. § 2254(d)(2), the decision is entitled to deference. Ground 1 is denied.[11]

**B.   Ground 2**

As stated above, in Ground 2 of his petition Petitioner asserts that he received ineffective assistance of counsel, in that trial counsel failed to request DNA testing on gloves Petitioner allegedly wore during the commission of the crime.   Petitioner maintains presenting scientific evidence to the jury that there was no DNA in the gloves would have been helpful to his defense, as Ms. Gunter testified that Petitioner wore the gloves during the crime.   (ECF No. 1-1, P. 14).

---

11 As further support for its ruling, the Court notes counsel articulated a valid strategic reason to advise Petitioner against testifying, *i.e.*, his concern that the jury would learn of Petitioner's

Petitioner raised this claim before the 29.15 post-conviction motion court, and the court denied the claim as follows:

FINDINGS OF FACT

6.      [Movant] claims he was denied his rights to due process and effective assistance of counsel, as guaranteed by the V, VI, and XIV Amendments to the U.S. Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution, because…(2) Counsel failed to have certain gloves Movant allegedly wore during the murder tested for DNA evidence, as such testing would have shown he had not worn the gloves and was therefore framed by Gunter….

11.      ….As for the DNA analysis of the gloves, Counsel related he believed there was no evidence of DNA on the gloves, but could not recall whether Highway Patrol had tested them for DNA.  Counsel agreed that if Gunter had said Movant had been wearing the gloves, it would have been useful to present scientific evidence that there was no DNA in the gloves.  Counsel agreed the evidentiary value of the gloves depended on Gunter's credibility.  Counsel could not recall hiring a DNA analyst in the case.

12.      For his second claim, Movant submitted the report and affidavit of Ms. Jami Harman, who works in the field of forensic biology and DNA analysis. Harman analyzed the gloves Gunter said Movant had worn while killing Dishneau.  Those gloves had been found and seized by investigators from the side of a rural highway in January, 2012, approximately eight days after the Dishneau[] murder.  Harman's report revealed no DNA profiles could be developed because no genetic information was obtained from the gloves. Harman observed the gloves had been exposed to environmental conditions before their collection by investigators, and there was black fingerprint powder on them.  As a consequence, Harman was unable to give a scientific opinion that the lack of genetic information was more likely due to the gloves not having been worn before their seizure as opposed to exposure to the outdoor elements and fingerprint powder.

CONCLUSIONS OF LAW…

16.      Counsel was not ineffective in failing to investigate and call a DNA analyst to show that the gloves Gunter claimed Movant wore were devoid of DNA.  Testimony at trial indicated the gloves were tested for gunshot residue which made it impossible to test for both residue and DNA as the residue test would remove any DNA.  Further, Movant failed to demonstrate in the instant cause that the testimony of a DNA analyst would have helped his case.  The affidavit of the DNA analyst, Ms. Harman, while indicating that no DNA material was found on the gloves, made clear that the exposure of the gloves to

---

criminal record and his suppressed confession.

environmental conditions before their collection by investigators, as well as the exposure to the fingerprint powder, rendered Ms. Harman unable to opine that lack of genetic information was more likely due to the gloves not having been worn before their seizure as opposed to exposure to the outdoor elements and fingerprint powder.  If the DNA analysis had been performed in time for use at the jury trial, the results would have been inconclusive and unlikely to aid in Movant's defense.  The Court concludes that no prejudice resulted from the performance of counsel with respect to the issue of the DNA analysis of the gloves.  Movant's second claim for relief under his amended motion is denied.

(ECF No. 18-1, PP. 280, 292-293, 295-296 (citations to the record omitted)).  Movant advanced

the claim on appeal from the denial of his 29.15 motion, and the Missouri Court of Appeals

denied the claim as follows:

> Nor did the motion court clearly err in denying Point 2, a claim that puzzles us.  It alleges Counsel was ineffective "for failing to have the gloves seized from the highway tested for DNA because…the DNA test would have revealed that [Movant's] DNA was not present, which evidence if presented at trial would have created a reasonable doubt whether [Movant] committed the charged crimes."
>
> Counsel's recollection and testimony, at the evidentiary hearing, was that the highway patrol **had** tested the gloves for DNA "and didn't find any."  That's just what Point 2 claims Counsel should have sought, and enabled Counsel in summation to make the very jury argument sought by Point 2:
>
>> On the gloves, Elizabeth Gunter said, hey, there's gloves.  I can tell you where they are.  Everything is on the side of the road.  Everything else got burnt.  For some reason these didn't get burnt.  They're on the side of the road seven days later.  They'll have blood and DNA.  **There's no blood and DNA traced to anybody.**  So, again, it comes down to the word of Elizabeth Gunter.
>>
>> There was another officer that sent a lot of other items up to testing.  **Again, nothing came by [*sic*] to either**—to Liz Gunter or Dennis Woodward, **but certainly not to Dennis Woodward**.  Again, everything linking Mr. Woodward to this is Elizabeth Gunter's testimony.
>
> Alternatively, Movant's amended motion complained that Counsel "failed to obtain an independent laboratory DNA analysis," which is not pressed on appeal and, from a tactical perspective, we don't understand anyway.  Counsel had the "no DNA" information he needed to make the jury argument he wanted.  Why then risk it all with another DNA test that might say the same thing, but might not?

For these reasons, and as well as those stated by the motion court in its judgment, we deny Point 2 and affirm the judgment.

(Resp. Exh. G, PP. 4-5).

Upon consideration the Court finds that with this claim, Petitioner fails to demonstrate the requisite prejudice to establish ineffective assistance of counsel.  Petitioner claims that had his attorney pursued DNA testing, he would have discovered a lack of DNA material on the gloves Ms. Gunter claimed Petitioner wore during the commission of the crime.  As noted by the Missouri Court of Appeals, however, DNA testing was performed on the gloves, and trial counsel referenced the results in his closing argument.  (*See* Resp. Exh. A-5, PP. 795-796). Furthermore, even Ms. Harman, whose report Petitioner submitted as evidence in his 29.15 proceeding, was unable to give a scientific opinion that the lack of genetic information was more likely due to the gloves not having been worn before their seizure, as opposed to exposure to the outdoor elements and fingerprint powder.  Thus, even if additional DNA analysis had been performed in time for use at Petitioner's trial, the results would have been inconclusive and unlikely to aid in his defense.  Under these circumstances, the Court cannot find that trial counsel's alleged failure caused prejudice to Petitioner.  Ground 2 of Petitioner's § 2254 petition must therefore be denied.[12]

### C.    Ground 4

In Ground 4 of his petition, Petitioner asserts that the trial court erred in failing to allow Petitioner to impeach his co-offender's testimony through her ex-husband.  (ECF No. 1-1, P. 2). Specifically, Petitioner states as follows:   "Trial Court deprived Mr. Woodward of a meaningful opportunity to present a complete defense in that the State's case rested upon Ms. Gunter's account of the murder and David Gunter's testimony would have impeached Ms.

---

12 In light of the above ruling, the Court need not consider whether counsel's performance was

Gunter's testimony on the relevant and material issue of her credibility."   (*Id.*).

Petitioner raised this claim on direct appeal, and the Missouri Court of Appeals denied

the claim as follows:

> David Gunter ("David"), Elisabeth's ex-husband, was called to testify as
> part of Woodward's defense that it was Elisabeth who wanted to rob Victim, it
> was Elisabeth who committed the murder, and that Elisabeth was known to be
> untruthful.   Woodward's counsel asked David whether Elisabeth "ever ma[d]e up
> some wild stories?"   David responded, "oh, yeah—" and the State objected.   The
> following represents the relevant interchange which followed:

> [Prosecutor]:          Judge, I'm going to object.   Can we approach?

> THE COURT:          Yes, you may.

> (A BENCH CONFERENCE WAS HELD.)

> [Prosecutor]:          First of all, I'd ask for a favor.   We could be here
> all day.   Second of all, he didn't ask about specific instances.   To ask
> about her general reputation, that's fine.   But asking for specific instances
> where he—she made up stories or she gave stories is not proper.

> THE COURT:          Response?

> [Defense counsel]:     Well, I'm just asking for things that he told her.

> [Prosecutor]:          You can't create the character of someone by
> pointing out specifics.   That's improper.

> THE COURT:          Whether the jury wants to elicit that—

> [Defense counsel]:     That she made up wild stories of the specifics of the
> story.

> [Prosecutor]:          He can ask the representation in the community as
> far as her truthfulness, but he can't pick out each and every lie and say,
> see, she's a liar.

> THE COURT:          Sustained.

> (THE BENCH CONFERENCE CONCLUDED.)

> [Defense Counsel]:     You were married to Liz Gunter for ten years?

deficient.

> [David]:                    Yep.
>
> [Defense Counsel]:    Was she known in the community to be truthful?
>
> [David]:                    I don't really know.   I guess so.

Defense counsel then moved on to different questions with no other record made on this subject….

In his first point, Woodward argues that the trial court abused its discretion in sustaining an objection to the introduction of testimony from David Gunter that ex-wife Elisabeth "ma[d]e up some wild stories."   As we have recited the relevant colloquy *in toto* above, we need not recite it again here.

Initially, we observe that David answered the question to which the prosecutor objected.   Though an objection was lodged after this answer was entered into evidence, the prosecutor did not move to strike the answer.   To prevent the introduction of otherwise inadmissible evidence, an objection must generally be lodged before responsive testimony is given.   ***State v. Blurton***, 484 S.W.3d 758, 774 (Mo. banc 2016).   Where the objectionable testimony has already been adduced, the objecting party must timely move to strike the answer. ***Id.***

Here, the prosecutor did not object until after David had already answered the challenged question.   The prosecutor did not seek a motion to strike or an instruction to disregard.   Otherwise objectionable testimony, which is not properly objected to and stricken from the record, is properly considered as evidence by the trier of fact.   *See* ***State v. Perdue***, 317 S.W.3d 645, 653-54 (Mo. App. S.D. 2010).   To that end, the evidence Woodward claims he was unable to get into evidence by error of the trial court actually was introduced into evidence. Woodward was, therefore, not prejudiced.

Additionally, to the extent Woodward would have sought additional testimony on the issue ruled upon, he failed to make any offer of proof.   The prosecutor conceded defense counsel could ask about Elisabeth's reputation for truthfulness in the community.   However, defense counsel elicited no other testimony beyond the portion of transcript set forth above.

> To preserve a claim of improperly excluded evidence, the proponent must attempt to present the excluded evidence at trial and, if it remains excluded, make a sufficient offer of proof.   The purpose of an offer of proof is to preserve the evidence so the appellate court understands the scope and effect of the questions and proposed answers.   Offers of proof must show what the evidence will be, the purpose and object of the evidence, and each fact essential to establishing admissibility.   Offers of proof must be specific and definite.

*State v. Hunt*, 451 S.W.3d 251, 263 (Mo. banc 2014) (internal quotation and citations omitted).

Because defense counsel failed to make an offer of proof, Woodward's claim is not preserved for appellate review.   Point I is denied.

(Resp. Exh. C, PP. 6-7, 8-9).

With limited exceptions, "admissibility of evidence at a state trial is a matter of state law and ordinarily will not form the basis for federal habeas relief[.]"   *Clark v. Groose*, 16 F.3d 960, 963 (8th Cir. 1994).   "Thus, on habeas review of a state conviction, a federal court does not examine whether evidence was properly admitted under state law."   *Tokar v. Bowersox*, 1 F.Supp.2d 986, 1004 (E.D. Mo. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)).   "Rather, review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."   *Id*. (internal quotation marks and citation omitted).   "'A state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process.'"   *Osborne*, 411 F.3d at 917 (quoting *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996)).

This Court does not find the Missouri State courts' ruling prohibiting Mr. Gunter's expanded testimony regarding Ms. Gunter's alleged propensity to "make up wild stories" denied Petitioner a meaningful opportunity to present a complete defense, or was "so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process."   *Osborne*, 411 F.3d at 917.   The exclusion of this evidence did not make Petitioner's entire trial fundamentally unfair.   *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Moreover, the Court notes that Petitioner provides no additional evidence regarding Mr. Gunter's proposed testimony, stating only that his testimony "would have impeached Ms.

Gunter's testimony on the relevant and material issue of her credibility."  (ECF No. 1-1, P. 2). Without more, Petitioner's claim amounts to no more than evidence that Mr. Gunter believed his ex-wife "made up wild stories."   As noted by the Missouri Court of Appeals, although the State objected to this statement and the trial court sustained the objection, it was not stricken from the record.   As such, the only evidence Petitioner complains was excluded was actually introduced at trial before the jury.   Petitioner thus has not met the high burden of establishing the State courts' evidentiary rulings violated the Constitution.   Therefore, the Court will deny Petitioner's petition as to this claim.

<u>**CONCLUSION**</u>

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**, and his claims are **DISMISSED** with prejudice.   A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability.   See *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).


Dated this 9th day of February, 2024.

_____
RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE